J-A01028-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                      :            PENNSYLVANIA
                                      :
              v.                      :
                                      :
                                      :
LAMAR DOLLARD                         :
                                      :
               Appellant           :     No. 2663 EDA 2022

Appeal from the Judgment of Sentence Entered May 9, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002425-2021

BEFORE:    LAZARUS, P.J., PANELLA, P.J.E., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.E.:          **FILED FEBRUARY 23, 2024**

Appellant, Lamar Dollard appeals from the judgment of sentence imposed following his convictions for firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and person not to possess a firearm.[1] Dollard claims that the trial court erred in denying his omnibus pretrial motion, specifically, to suppress the firearm obtained from the search of his vehicle. We affirm.

On November 1, 2020, Philadelphia police officers Stout and Rosinski were on patrol. They observed a 2004 Chevrolet conversion van with heavy tint on all the windows, including the windshield. The van made an illegal U-

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6106(a), 6108, and 6105(a), respectively.

turn on Lehigh Avenue, around the 1500 block. The officers activated their lights and conducted a traffic stop. Dollard pulled over into a gas station parking lot.

The officers recognized the van from a homicide patrol alert. The patrol alert had a picture of the van along with its license plate number, which matched the van the officers stopped. The patrol alert indicated that homicide detectives wanted the van and any occupants transferred to the station. The homicide from the alert occurred just 15 days prior to this and only approximately 100 feet from where officers stopped Dollard. Officers immediately called their supervisor, Sergeant Mirabella, to inform him that they had the van identified in the homicide patrol alert. The officers removed Dollard from the van and frisked him for officer safety.[2] The officers located marijuana in Dollard's pocket. They placed Dollard under arrest for possession of marijuana.[3]

Sergeant Mirabella responded to the scene and called the homicide detective from the patrol alert. Sergeant Mirabella was instructed by the homicide detective to tow the vehicle for further investigation. Ultimately, the

_____

[2] The trial court found the officers conducted a valid frisk for officer safety. **See** Trial Court Opinion, at 10-11. Dollard has not challenged this finding on appeal.

[3] The trial court found Dollard not guilty of the possession of marijuana charge after a waiver trial. **See** N.T. 1/28/22 at 44.

- 2 -

homicide detectives cleared Dollard and his van after discovering that he was not involved in the homicide.

Sergeant Mirabella explained it is their policy to look inside a vehicle prior to towing it to check for things that could be dangerous to officers or the general public, and for valuables.[4] Officers conducted an inventory search of the van and discovered a firearm in a bag under the backseat.[5] When the officer picked up the bag, he immediately recognized what he knew to be a firearm inside it. Once he felt the firearm, he opened the bag and observed a Polymer80 lower, custom middle upper slide, no serial number firearm (what is commonly referred to as a ghost gun). Dollard was charged with firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, person not to possess a firearm, and possession of marijuana.

_____

[4] Notably, Sergeant Mirabella, in his 8 years' experience as an officer with the Philadelphia police, has found "actual bombs, … propane tanks, … $50,000 under a seat" in vehicles that were to be transferred to the impound lot. N.T., Suppression Hearing, 6/14/21, at 40.

[5] Dollard avers that the search was conducted prior to any decision to tow the van. *See* Appellant's Brief at 15. Even if a search were conducted prior to the decision to tow, we find that the inventory search was valid, and the firearm would have inevitably been discovered. *See Commonwealth v. Bailey*, 986 A.2d 860, 862 (Pa. Super. 2009) (declining to address issue of consent to search the vehicle because the police would have inevitably found the firearm due to the inventory search police conducted when the vehicle was towed).

Dollard filed a motion to suppress the firearm located in his vehicle. The trial court held a hearing on the motion on June 14, 2021. The hearing was bifurcated, as Dollard initially indicated that he felt "duty-bound to talk with these detectives and get the video for this Court to make a determination as to why this patrol alert was even issued . . . ." N.T. Suppression Hearing, 6/14/21 at 8. At the end of the hearing, Dollard stated "I think we're just going – we're not going to bifurcate now, Judge. I'm going to rest." *Id.* at 46. Although the trial court indicated it had some questions for the detectives, no testimony was presented from either side at the subsequent July 21, 2021, hearing. Prior to the hearing's commencement, however, both parties submitted briefs. The court denied Dollard's motion at the end of the hearing, incorporated the Commonwealth's facts and assessment of the applicable law, and found the officers' testimony credible. *See* N.T. Suppression Hearing, 7/21/2021, at 6-7.

After a bifurcated waiver trial, held on January 4, 2022, and January 28, 2022, the court found Dollard guilty of firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, and person not to possess a firearm. It sentenced him to an aggregate term of five to ten years' imprisonment. Dollard filed a timely post-sentence motion, which was denied on May 18, 2022. Counsel was granted leave to withdraw, and new counsel was appointed. However, new counsel was unable to speak with Dollard prior to the deadline to file an appeal. Once new counsel spoke

with Dollard, he immediately filed a petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, seeking reinstatement of his appeal rights *nunc pro tunc*. This request was granted, and Dollard filed the instant appeal.[6]

Dollard presents one issue for our review: whether the trial court erred in denying his pretrial motion to suppress evidence. ***See*** Appellant's Brief at 20. Dollard submits four arguments in support of this issue: the police did not have probable cause to search his van; the police did not have exigent circumstances to search his van; the police did not conduct a lawful frisk of his van; and the police did not conduct a lawful inventory search of his van. ***See*** Appellant's Brief at 24, 31, 35, and 41. Because we affirm based on the inevitable discovery doctrine, we do not reach the question of whether the police illegally searched the van.

Our long-standing standard of review on suppression denials is as follows:

> In reviewing an order from a suppression court, we consider the Commonwealth's evidence, and only so much of the defendant's evidence as remains uncontradicted. We accept the suppression court's factual findings which are supported by the evidence and reverse only when the court draws erroneous conclusions from those facts.

---

[6] The trial court ordered Dollard to file a Rule 1925(b) statement of errors complained of on appeal on October 21, 2022. Dollard complied and filed his statement on November 10, 2022.

*Commonwealth v. Hennigan*, 753 A.2d 245, 254 (Pa. Super. 2000) (internal citation omitted). It is undisputed that the Fourth Amendment and Article I, Section 8 prohibit unreasonable searches and seizures.[7] Generally, a search or seizure without a warrant is deemed unreasonable for constitutional purposes. *See Commonwealth v. Lagenella*, 83 A.3d 94, 102 (Pa. 2013). There are a number of exceptions to the warrant requirement. One such exception is the inventory search of a vehicle which is lawfully impounded by police. *Id.*

There are two requirements for a valid inventory search: first, police must have lawful custody of the vehicle; second, the inventory search must be reasonable, *i.e.*, must be conducted pursuant to a reasonable standard police procedure and in good faith, not for the purpose of investigation. *Id.* at 102-103. Inventory searches are not tools of an investigation, but rather:

> serve several purposes, including (1) protection of the owner's property while it remains in police custody; (2) protection of the police against claims or disputes over lost or stolen property; (3) protection of the police from potential danger; and (4) assisting the police in determining whether the vehicle was stolen and then abandoned.

*Id.* at 102 (citation omitted).

Lawful custody of a vehicle has been found under several circumstances, including when it is in the interests of public safety and the efficient movement of traffic, when the operator has been arrested, and when police are obtaining

---

[7] U.S. Const. amend. IV; Pa. Const. art. I, § 8.

a search warrant. *See Hennigan*, 753 A.2d at 256; *Commonwealth v. Holzer*, 389 A.2d 101, 106 (Pa. 1978); *Commonwealth v. Collazo*, 654 A.2d 1174, 1177 (Pa. Super. 1995). Section 3352 of the Pennsylvania Motor Vehicle Code provides additional reasons for police to lawfully impound a vehicle. In relevance to this case, police may impound a vehicle when the person in charge of it is physically unable to remove it, and when the vehicle is in violation of section 3353, which provides that no person shall leave a vehicle unattended on private property without the consent of the owner. *See* 75 Pa.C.S. §§ 3352(c)(2), (4); 3353(b)(1).

Dollard claims that the police did not have lawful custody of the van. *See* Appellant's Brief at 45. However, in his brief to the trial court, Dollard claimed that police searched the van with investigatory intent. *See* Corrected Memorandum in Support of Mr. Dollard's Motion to Suppress Physical Evidence, 7/14/21, at 3. The Commonwealth asks us to find the issue waived. *See* Appellee's Brief, at 7; *see also* Pa.R.A.P. 302(a). Because the trial court addressed the issue and our review is not hampered, we decline to find waiver.

We find that the police had lawful custody of the van. Dollard was arrested for marijuana possession and was unable to remove the van from the gas station into which he pulled pursuant to the traffic stop. Because Dollard was being arrested, he could not move the van himself, *i.e.*, he was "physically unable to provide for the custody or removal of the vehicle." 75 Pa.C.S. §3352(c)(2). Furthermore, Dollard presented no evidence to show that he

could leave his van in the gas station parking lot. Pursuant to 75 Pa.C.S. § 3353(b)(1), Dollard could only leave his vehicle on private property with the consent of the owner or other person in control or possession of the property, unless there was an emergency or disablement of the vehicle. None of these exceptions are applicable here.

Police have been given authority by our legislature to move a vehicle on private property under § 3352(c)(4):

> Any police officer may remove or cause to be removed to the place of business of the operator of a wrecker or to a nearby garage or other place of safety any vehicle found upon a highway under any of the following circumstances … (4) The vehicle is in violation of section 3353 (relating to prohibitions in specified places) except for overtime parking.

75 Pa.C.S. §3352(c)(4).[8]  Here, the van was in violation of section 3353 because there was no evidence that Dollard had the consent of the owner or anyone else from the gas station to leave his vehicle on their property. Therefore, police had lawful custody of Appellant's van and the first requirement for a valid inventory search has been met. **See Lagenella**, 83 A.3d at 102-103.

Turning to the second requirement, that the inventory search was reasonable and not designed to investigate, we note that the trial court

---

[8] While we affirm based on the trial court's well-reasoned decision that 75 Pa.C.S. §3352(c)(2) applies, we also note that subsection (c)(4) applies; we may affirm by reasoning different than that used by the lower court. **See Commonwealth v. Toanone**, 553 A.2d 998, 1001 (Pa. Super. 1989).

credited the testimony of the sergeant and found that the search was conducted pursuant to a standard police procedure.[9] Therefore, the second requirement is met, and we conclude that the trial court properly found that a valid inventory search was conducted.[10]

Next, we must address one other claim raised by Dollard: that the inventory search exception is no longer applicable after **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020). **Alexander** held that the federal automobile exception is incompatible with the Pennsylvania Constitution and requires both probable cause and exigent circumstances for an investigatory search of a car, absent a warrant. **Id.** at 207. Recently, however, a panel of this Court observed that **Alexander** did not address the inventory search exception, and its holding must "be read against its facts." **Commonwealth v. Thompson**, 289 A.3d 1104, 1109 (Pa. Super. 2023) (internal citation omitted). The Court concluded that, because "[t]he relevant factual context in

_____

[9] "Sgt. Mirabella testified that each vehicle towed is searched thoroughly due to safety concerns for police and possible unseen occupants." Trial Court Opinion, at 14.

[10] Based on our disposition, we decline to address Dollard's other challenges related to the search because they are irrelevant due to the inevitable discovery doctrine. The inevitable discovery doctrine allows the Commonwealth to use evidence that was illegally obtained if it shows by a preponderance of the evidence that the evidence would have been discovered anyway by lawful means. **See Bailey**, 986 A.2d at 862 (Pa. Super. 2009). Here, it is inevitable that the Commonwealth would have discovered the firearm because the van was lawfully impounded and searched pursuant to a valid inventory search. Therefore, whether Dollard's other challenges have merit is irrelevant.

*Alexander* … was a search for evidence of a crime and the corresponding need to establish probable cause to search[,] [*Alexander*] does not eliminate the inventory search exception." *Thompson,* 289 A.3d at 1109-10.[11] Therefore, Appellant's claim to the contrary lacks merit.

Judgment of Sentence Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/23/2024

---

[11] We recognize that the Pennsylvania Supreme Court has granted permission to appeal in *Thompson*, however, we are bound by the law as it currently stands. *See Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa. Super. 2006).